AYRES, Judge.
This is an action in tort resulting from an intersectional collision occurring about 9:30 a. m. November 9, 1952, on Claiborne and Linwood Avenues in the City of Shreveport. Plaintiff C. A. Morrison prays for an award in his favor for damages to the community automobile, which was driven at the time of the accident by his wife. Mrs. Morrison joins her husband as one of the parties plaintiff, but, as the only claim made on their behalf was for damage to the automobile, she was dismissed from the suit on an exception of no cause or right of action inasmuch as the husband, as the head and master of the community of acquets and gains existing between them, was the proper plaintiff.
Henry H. Lieb was a passenger in the Morrison car and received injuries to his person for which he seeks to be compensated.
The defendant, Yellow Cab Company of Shreveport, Inc., is the owner of the other vehicle involved, a taxicab, which was being operated by one of its cab drivers, W. M. Mayfield, in the regular course of his employment.
Each of the drivers of the vehicles is charged with negligence proximately causing the accident, and, in the alternative, Mrs. Morrison and Henry PI. Lieb were charged with contributory negligence, barring recovery in this suit by either plaintiff.
The negligence charged against defendant’s driver was that he entered the intersection without stopping for a red stop light, and failed, in these particulars: to yield the right of way to Mrs. Morrison, to keep a proper lookout for other vehicles, to keep his car under control, to apply his brakes or pursue other means to avoid the accident, or to warn plaintiffs of his approach by sounding his horn, and in driving his vehicle at an excessive rate of speed in violation of an ordinance of the City of Shreveport.
In addition to similar charges of negligence against Mrs. Morrison, she was additionally charged with attempting a left-hand turn at an intersection without giving proper signal of such intention and in disregard of the rules of safety in view of closely approaching traffic and in view of the lack of sufficient time or opportunity to complete said turn in the manner in which she was driving.
The negligence charged to Lieb is that he failed to warn Mrs. Morrison, the driver of the car, of the approaching cab of defendant and in not protesting against her attempt to make a left-hand turn under the circumstances there existing.
From a judgment in favor of C. A. Morrison for $345 and in favor of Henry H. Lieb for $1,000, defendant appealed.
The trial judge, in a written opinion, correctly stated and summarized the facts as disclosed by the record, as follows:
“The two streets intersect each other at right angles, Claiborne running east-west and Linwood north-south. Both are designated right-of-ways streets. Suspended above the center of the intersection is a conventional semaphore traffic light operating in this sequence: red - green - amber and green - red. It was raining and the streets were wet and slippery, although visibility was not materially impaired.
“We find from the evidence that the collision happened as follows: Mrs. Morrison was driving south on Linwood in her proper lane and, on arriving at the north side of Claiborne, she stopped for the red light which was *157 then facing her. Across the intersection on Linwood were two cars headed north, but also stopped by the same red light. A short distance behind these two cars was a third car, also headed north, slowly approaching the intersection. As the light changed to green from red the two cars headed north began to move to go through the intersection, followed closely by the third car which had not had to stop. It was Mrs. Morrison’s intention to turn left and proceed east on Claiborne to a place of business she and' her husband operated on Claiborne. After the light changed to green from red, and at the same time that the two cars headed north and stopped opposite on the south side of the intersection started to move, Mrs. Morrison began to move southward into the intersection toward the center, extending her left arm horizontally out of the left window in signal of her intended left turn. We find that Mrs. Morrison drove in this manner to the center of the intersection where she momentarily stopped to allow the three cars headed north, above referred to, to clear and permit her to make the left turn. We find that at the moment heretofore referred to, when the light changed to green from red and when Mrs. Morrison and the three cars facing her started moving into the intersection in the manner we have indicated, the cab of defendant was more than, a block south of the intersection headed north towards the intersection. We find that, when Mrs. Morrison reached the center of the intersection and stopped momentarily for the other three cars to pass by her, still signaling in the legal manner her intention to make the left turn, the cab was still more than a half block away to the south. When the third car headed north passed by Mrs. Morrison, she then began to turn her car to the left around the center of the intersection and headed east on the south side of Claiborne. At that moment we think the cab was at least seventy-five feet south of the south line of Claiborne.
“Mrs. Morrison, who had seen the cab from the time it came over a hill a block and a half south of the intersection, testifies that she felt sure that she had ample time to make the left turn in safety. We think she was justified in that conclusion and had the right to proceed under the circumstances. The cab driver had seen her even while the red light had her stopped on the north side of Claiborne. He observed her movements from the time she began to move into the intersection when the light changed to green from the red, and he saw her signaling for the left turn. He so testified. He also testified in answer to a question by the Court that ‘She had plenty of time to make the turn after the three cars had made the light before I got there.’ Again, the cab driver testified, ‘Q. Did you say a moment ago she had plenty of time to turn behind the third car before you got there? A. That’s right, if she went ahead and turned, but she didn’t turn * * * She waited until I got up there. Q. But you saw her hand out? A. Yes, sir, and I slowed up when I came up under the light.’
“But the evidence convinces us that Mrs. Morrison did not wait, but began her left túrn the instant the third car cleared. The evidence likewise convinces us not only that the cab driver did not slow up, but that he actually accelerated his speed just before reaching the intersection. The passenger in the cab, a colored man, Charley Fox, called as a witness by plaintiff, so testified. It is also clear to us why the driver accelerated his speed just before reaching the intersection. The green light which had been facing him for more than a block suddenly changed to green and amber. Knowing that a red light was to follow momentarily, he speeded up his vehicle to avoid being *158 stopped, and turned left to swing around the rear end of the Morrison car. But his vehicle skidded and he applied his brakes just before the impact between the right front of the cab and the right rear of the Morrison car. The cab driver testified that he entered the intersection on a green light. In our opinion, this is only half the truth —it was green and amber. We do not base this conclusion on the testimony of Mrs. Morrison and Lieb that such was the case, for we agree that they were not in position to see the change. Nevertheless, the evidence as a whole convinces us of the fact.
“The point of impact was in the southeast quarter of the intersection and the contact occurred when the front of the Morrison car had about reached the east curb line of Lin wood and when the car was headed east parallel with the south line of Claiborne. The Morrison car was hit with such force that it was knocked around 180 degrees and across Claiborne coming to rest, headed west, at or against a utility pole on the northeast corner of the intersection.”
Although it is true that Mrs. Morrison was attempting a left-hand turn, which maneuver is uniformly recognized as a dangerous; operation, especially on streets where the traffic is heavy as is the case of the streets herein involved, and which requires extreme care and caution, we have concluded, as did the trial judge, that, under the facts and circumstances of this case, Mrs. Morrison was not negligent in attempting the left-hand turn. She entered the intersection on a green light and drove to the center of the street, gave the usual and proper signal of her intention to make the turn and awaited the passage of three cars approaching from the opposite direction. She continued to give the signal of her intention to make a left-hand turn. She was not negligent in continuing to carry out he'r intention of turning although she saw the cab approaching at a considerable distance, which, under normal conditions, would have afforded her ample time and opportunity to negotiate the movement intended and which she, no doubt, would have done had it not been for the acceleration of speed by the cab driver in order to make the green light at the intersection.
The conclusion is obvious that .the cab driver was guilty of negligence in thus accelerating his speed just before reaching the intersection to an excessive rate under the circumstances,; and in failing to yield the right of way to permit Mrs. Morrison to complete her left-hand turn. In this connection, LSA-R.S. 32:237 provides:
“The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of .travel of his vehicle; .provided, the driver of the vehicle turning left has given the signal required by R.S. 32:236.”
Therefore, as defendant’s driver, according to his own testimony, observed Mrs. Morrison in the intersection, giving a signal of her intention to turn to the left ,and in the actual attempt thereat in ample time to complete the same, if he had not accelerated his speed, he had the last clear chance to. avoid the accident, which he could have done by maintaining his rate of speed or, if necessary, by reducing the same, as was his statutory duty to do, and permit Mrs. Morrison to complete the turn. The sole proximate cause of the accident was the careléssness and negligence of defendant’s driver. Defendant should therefore respond to plaintiffs for whatever damages they may have sustained.
The damages sustained by plaintiff’s car was proven in a sum exceeding that prayed for, but timely objection was made to any enlargement of the pleadings. Therefore, plaintiff C. A. Morrison’s recovery is limited to the amount sued for.
*159 Plaintiff Henry H. Lieb, a resident of Denver, Colorado, and a brother-in-law of Mrs. Morrison, with whose family he was visiting, was riding on the right side of the front seat of the Morrison car when the collision occurred. He testified by deposition, from which we learn that he was a disabled veteran of World War I. Concerning the injuries sustained by him, he testified as follows:
“My side was very sore from the date of the accident until about January 11, 1953, and I continued to have a dull ache in my side for about two months. I was forced to wear an Elastoplast bandage for about thirty days, during which time I could hardly bend and move around, which made it impossible for me to do my work. I had great difficulty in breathing for several days after the accident and particularly up until the time that the bandage was applied to my side, the condition being aggravated by a bad cold which I had contracted after the accident.”
Following the accident, Lieb was examined by Dr. Frederick B. Warshauer of Denver, Colorado, on November 19, 1952, who stated by deposition that he found from his physical examination evidence of a fracture of the right 10th rib in the posterior axillary line with localized tenderness in that area on compression of the rib cage and sternum and evidence of a contusion of the anterior aspect of the right arm near the shoulder. A later examination of January 12, 1953, showed no significant tenderness or disability. The doctor expressed an opinion that the injuries and suffering sustained by plaintiff resulted from the accident of November 9, 1952. No permanent disability resulted to Lieb and none is claimed. Compensation was only sought for his pain and suffering. We are in accord with' the trial judge’s statement that damages for such imponderables as pain and suffering can never be fixed with exactness and the courts are vested with a wide discretion in such matters. The award made by the trial court does not appear excessive for the injuries sustained by this plaintiff.
The judgment appealed is, therefore, affirmed at appellant’s cost.
Affirmed.